[Cite as *In re G.W.*, 2014-Ohio-2579.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN RE: :  

                      CASE NO. CA2013-12-246

     G.W. :  

                      O P I N I O N

:            6/16/2014

:  

:  

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2011-0505

Jeannine Barbeau, 3268 Jefferson Avenue, Cincinnati, Ohio 45220, Guardian Ad Litem

Tracy Washington, 10 Journal Square, 3rd Floor, Hamilton, Ohio 45011, Guardian Ad Litem

Scott Blauvelt, 246 High Street, Hamilton, Ohio 45011, for appellant

Michael T. Gmoser, Butler County Prosecuting Attorney, Government Services Center, Michael A. Oster, Jr., 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

**S. POWELL, J.**

{¶ 1} Appellant, the biological mother of G.W., appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of the child to a children services agency.

{¶ 2} On November 29, 2011, the Butler County Department of Job and Family

Services filed a complaint alleging that G.W. was a neglected and dependent child. The complaint alleged that the agency received a referral on November 26, 2011 that G.W. was born the previous day at home with the assistance of paramedics. The referral indicated that there was no electricity or running water in the home and appellant did not have a car seat, crib or bassinette for the child and only very limited food and hygiene supplies. In addition, appellant tested positive for opiates at the time of the child's birth.

{¶ 3} The complaint further alleged that agency workers investigated and found no working utilities or water, and the only baby items in the home were a few clothes, a bathtub, formula and diapers provided by a ministry. Appellant reported that she lives in the home with her mother, and the home has been without utilities for the past 16 months. Appellant indicated that the Hamilton Health Department wanted to declare the home an unfit dwelling. On investigation the agency discovered that the grandmother was fined in June 2011 for a violation of city ordinance that requires all homes to have working utilities.

{¶ 4} On February 6, 2012, appellant agreed to a finding that G.W. was a dependent child. A case plan was adopted that required appellant to undergo a substance abuse assessment and a psychological evaluation, to complete a parenting class and mental health services, and to improve the condition of the home and have utilities turned back on in the home. Appellant made little progress on the case plan and the agency moved for permanent custody on April 16, 2013. A magistrate issued a decision granting permanent custody of G.W. to the agency. Objections to the decision were overruled by the trial court on December 2, 2013.

{¶ 5} Appellant now appeals the trial court's decision to grant permanent custody of G.W. to the agency. She raises the following sole assignment of error for our review:

{¶ 6} APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL TO HER PREJUDICE, IN VIOLATION OF THE RIGHT TO DUE PROCESS UNDER THE FIFTH

AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ART. I, § 16 OF THE OHIO CONSTITUTION.

{¶ 7} Specifically, appellant argues that trial counsel was ineffective for failing to file a motion prior to the permanent custody hearing requesting legal custody on behalf of non-relatives as an alternative to permanent custody. During the course of the case, appellant requested that family friends, the Furhmans, be considered as a possible placement for the child. During an October 8, 2012 review hearing, appellant's counsel requested that temporary custody be granted to the Furhmans. Counsel for the foster parents, the G.A.L. and the agency all expressed concern regarding the request to place G.W. in the temporary custody of the Furhmans. The court determined that the request should be considered after an evidentiary hearing.

{¶ 8} After a hearing on January 23, 2013, the court found that it was not in the child's best interest to grant temporary custody to the Furhmans. However, because the Furhmans testified at the hearing that they were going to file a motion for legal custody, the court granted visitation with the child. No motion for legal custody was ever filed. At the permanent custody hearing, appellant indicated that she wanted custody of G.W., but if she were not granted custody, she would like to see G.W. placed with the Furhmans. In the decision granting permanent custody to the agency, the trial court found that although visitation was granted to the Furhmans in anticipation of a motion for legal custody, no motion was ever filed. The court indicated that Mrs. Furhman gave several reasons for the failure to file a motion for legal custody, including the inability to pay the filing fee.

{¶ 9} On appeal, appellant argues that her trial counsel was ineffective for failing to file a motion for legal custody on behalf of the Furhmans. Appellant contends that because a motion for legal custody is mandatory before the court can consider granting custody to a non-parent, her counsel was ineffective for failing to file a motion on the Furhmans' behalf.

- 3 -

Appellant also contends that she was prejudiced by the failure to file such a motion because it prevented the court from considering a legally secure placement for G.W. other than permanent custody.

{¶ 10} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

{¶ 11} In this case, the trial court found that G.W. had been in agency custody for at least 12 of 22 months and that granting permanent custody was in the child's best interest. In considering the best interest of a child in a permanent custody hearing, the court must consider "[t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." R.C. 2151.414(D)(1)(d). In this case, the court considered this factor and found that G.W. had a need for a legally secure placement which could not be achieved without a grant of permanent custody. As mentioned above, appellant argues that the failure of her counsel to file a motion for legal custody removed consideration of the Furhmans as an alternative to granting permanent custody.

{¶ 12} Parents are entitled to the effective assistance of counsel in custody hearings involving an involuntary termination of parental rights. *In re Noe*, 12th Dist. Butler No. CA96-

10-217, 1997 WL 411594 (July 21, 1997); *Jones v. Lucas Cty. Children Services Bd.*, 46 Ohio App.3d 85, 86 (6th Dist.1988). When determining whether counsel was ineffective in a permanent custody hearing, a reviewing court must apply the two-tier test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). *In re Spillman*, 12th Dist. Clinton No. CA2002-06-028, 2003-Ohio-713. First, appellant must show that counsel's actions were outside the wide range of professionally competent assistance. Second, appellant must show that she was prejudiced as a result of counsel's actions. *Strickland* at 689. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of professional assistance. *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989).

{¶ 13} It is well-established that a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the appellant as a result of the alleged deficiencies. *Id.* at 143. Prejudice will not be found unless appellant demonstrates there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *State v. Carpenter*, 116 Ohio App.3d 615, 622 (2d Dist.1996).

{¶ 14} After carefully reviewing the record in this case, we find appellant has not established that her counsel was ineffective because she cannot establish she was prejudiced by counsel's failure to file a motion for legal custody on behalf of the Furhmans. At the January 23, 2013 hearing to consider the request to grant temporary custody to the Furhmans, evidence was presented to show that a home study by the agency had been approved. However, the home study indicated that the Furhmans have a limited income and Mrs. Furhman has chronic acute lower back pain and high blood pressure. In addition, the home study report indicated Mrs. Furhman is prescribed medication for depression, but

cannot afford the medication.

{¶ 15} The report also indicated concern regarding the Furhman's commitment to the child. The report stated that Mrs. Furhman told workers she was aware that G.W. had been in foster care since his birth in November 2011, and may need a temporary placement, but she did not request a home study until March 2012. Additionally, after the initiation of the home study, several home visits were scheduled, and then cancelled by the Furhmans before a home visit finally took place on April 26, 2012. Fingerprints were not completed until May 1, 2012, despite several reminders since March 14, 2012 for the Furhmans to do so. In addition, the home study indicated that the Furhmans have not contacted the agency to inquire about the child's welfare, schedule a visit or to inquire about the status of their home study. The worker completing the study concluded that although there are concerns, the Furhmans met the administrative standards necessary for an approved placement.

{¶ 16} At the hearing on the temporary custody motion, appellant testified that she wanted the Furhmans to have temporary custody of the child. Mrs. Furhman testified that she intended to file for legal custody of G.W. and had the paperwork completed, but just needed to sign it and file it, and she intended to have it filed by the next morning. In addition, concerns were raised regarding Mrs. Furhman's back condition and her ability to physically care for a young child. She testified that she is unable to work and has filed for disability. Evidence was presented that Mr. Furhman suffers from a seizure disorder. Additional information was also presented that a default judgment of over $2000 plus interest in favor of the City of Hamilton was entered against the Furhmans.

{¶ 17} In addition, Mrs. Furhman indicated that even though appellant's visits were suspended in December 2012 due to lice and Mrs. Furhman was unable to visit, she never requested for visitation on her own. Evidence was also presented that G.W. fell off a couch and hurt his head at a visit while being supervised with appellant and Mrs. Furhman.

Additional evidence was presented that Mr. Furhman had been convicted of menacing and disorderly conduct and driving under a suspension. Mrs. Furhman also indicated that if she had temporary custody, she would allow appellant and her mother to pick the child up and take him to their house. The guardian ad litem indicated she had observed Mrs. Furhman struggling to get down the stairs in her home, leaning her whole back against the wall and going sideways down the stairs.

{¶ 18} At the end of the Furhmans' presentation of evidence, the attorney for the foster parents expressed concern regarding the Furhmans' ability to care for a young child and made a motion that the request be denied. The G.A.L. also expressed concern and indicated that she was not recommending placement with the Furhmans and further indicated that she had subpoenaed witnesses to testify on behalf of her position.

{¶ 19} The trial court found that construing the evidence presented by the Furhmans in their favor, it was a "real serious gamble" and "too risky, based on what I've heard" to place G.W. with the Furhmans. The court acknowledged that there were other things that could change this dynamic in the future, but "as it stands right now, I can't even imagine how I could do this." In its written decision denying the motion for temporary custody, the court indicated that because of concerns regarding Mrs. Furhman's health, the Furhmans' lack of contact with G.W. and concerns about their finances, it was not in the child's best interest to be placed in their care.

{¶ 20} However, given that the Furhmans indicated they would be filing for legal custody, the court determined it would be unfair to foreclose them from contact with the child. The Furhmans were currently unable to visit during appellant's visitations as they had previously done, because appellant's visits had been suspended due to lice. Accordingly, the court issued an order that the Furhmans could visit G.W. The court ordered that these visitations be supervised at the same level as appellant's visits, the highest level of

supervision. Mrs. Furhman attended four of these visitations.

{¶ 21} At a May 13, 2013 review hearing, the parties indicated that the Furhmans still had not filed a motion for legal custody. Counsel for the foster parents indicated that although it had taken the Furhmans some time after the January hearing to begin visiting with the child, they were currently engaging in visitation. The foster parents' counsel requested that the court terminate the visitation because the Furhmans were not legally part of the case and despite Mrs. Furhman's statements that she would be filing for legal custody the day after the January hearing, no motion had been filed. Counsel for appellant stated that appellant informed him that the Furhmans still intended to file for legal custody.

{¶ 22} The court denied the motion to terminate the Furhmans' visitation, but indicated that it would consider it at a later date if the Furhmans continued to delay asking for custody. The visits were eventually terminated by the court in July 2013. In the order terminating the Furhmans' visitation, the court stated that "at the last hearing, more than two months ago, [it had] advised the parties that the court could not consider placement of this child in the custody of the Furhmans unless they filed a motion requesting same." The court found it was in G.W.'s best interest to suspend visitation with the Furhmans.

{¶ 23} At the permanent custody hearing, the foster mother testified that she had observed some of the interactions between G.W. and Mrs. Furhman during visitations. She testified that if G.W. ran away, Mrs. Furhman had trouble following him and keeping up with him during visits. The foster mother also testified that G.W. would wake up crying after these visits and would have trouble sleeping. She testified that once the visits with the Furhmans were terminated in July, this behavior stopped. The agency caseworker testified that the agency considered the Furhmans as an alternative to foster care, but even though the home study passed, there were concerns with the Furhmans as a placement option. These concerns included Mrs. Furhman's overall physical health, the fact that the Furhmans only

passed the financial portion of the study with only a small amount of money to support G.W, and Mrs. Furhman's overall commitment to the child. The visitation supervisor testified that she observed Mrs. Furhman's visits with G.W. and that she was concerned with Mrs. Furhman's health because most of the time she would sit on the couch and it seemed difficult for her to follow the child around.

{¶ 24} At the permanent custody hearing, Mrs. Furhman testified that she wanted the court to consider granting legal custody to her. She indicated that the reason she had not filed a motion was because she filled it out, and then at first there were issues with the computer not creating the entire document it was supposed to print, and she finally got the correct documents and filled them out a couple weeks after the January 2013 hearing, she went to file, but was informed there was a filing fee. She indicated that they did not have the money for the filing fee and she was informed in August that she was not eligible to have the fee waived. In the court's decision on permanent custody, it indicated no appropriate relatives had come forward as placement options. The court reviewed the Furhmans' participation in the case, indicating that it had previously denied temporary custody and that Mrs. Furhman indicated in January that she was going to file a motion for legal custody. The court determined that "it appears that Mrs. Furhman's failure to file was due more to her lack of diligence in that regard rather than any of the reasons cited in her testimony."

{¶ 25} Although appellant argues that her counsel was ineffective for failing to file a motion for legal custody on behalf of the Furhmans, we cannot find that there was a reasonable probability such a motion would have been granted. *See In re N.P.*, 8th Dist. Cuyahoga Nos. 97846 to 97855, 2012-Ohio-4298. In addition, the consideration of alternate placements for a child is just one of the factors a court must consider in its decision to grant permanent custody. *In re Williams*, 2d Dist. Montgomery No. 18217, 2000 WL 1299540 (Sept. 15, 2000).

{¶ 26} As discussed above, the trial court denied the Furhmans' motion for temporary custody. At that time, concerns existed regarding the Furhmans' finances, Mrs. Furhman's health and ability to care for a young child, and the Furhmans' level of commitment. The G.A.L. advocated against granting custody to the Furhmans. At the time of the permanent custody hearing, these concerns were again expressed by several witnesses. The Furhmans' failure to file a motion for legal custody increased the level of concern regarding both their finances and their level of commitment to the child. Because there was not a reasonable probability that a motion for legal custody on behalf of the Furhmans would have been granted, appellant cannot establish any prejudice. Accordingly, we cannot find that appellant received ineffective assistance of counsel. Appellant's sole assignment of error is overruled.

{¶ 27} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.