OPINION
{¶ 1} Appellant, Nancy Golio-Ianetti, appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor granddaughter and grandson, Annalissa McCann and Raven Aries Indigo Marceau, to the Clermont County Department of Job and Family Services ("CCDJFS"). We affirm the decision of the trial court.
 {¶ 2} Annalissa was born on October 10, 2000 to Daniel McCann and Adrienne McCann-Paolini. Appellant is Daniel McCann's mother.
 {¶ 3} On July 17, 2001, CCDJFS filed a complaint for temporary custody of Annalissa in the Clermont County Court of Common Pleas, alleging that she was a neglected child. The trial court found her to be neglected on July 20, 2001, and granted temporary custody to CCDJFS.
 {¶ 4} On August 21, 2001, appellant moved for residential parent designation. On September 12, 2001, she moved to intervene. A review of the record shows that appellant's motion was never ruled upon.
 {¶ 5} Raven was born on September 19, 2001. On September 20, CCDJFS filed a second complaint alleging that Raven was a dependent child. The trial court found him to be so on October 2, 2001 and granted CCDJFS temporary custody of him.
 {¶ 6} On March 27, 2002, Adrienne filed a permanent surrender of both Annalissa and Raven ("the children"), which was approved by the trial court. On June 6 of that year, CCDJFS filed for permanent custody of the children. On June 14, 2002, appellant filed a motion to intervene. She also moved for a modification or termination of the previous disposition of the children pursuant to R.C. 2151.353(E)(2) and moved for permanent custody.
 {¶ 7} A hearing was held on July 19, 2002 and concluded on September 20, 2002. The trial court granted appellant's motion to intervene, but denied her motion for a new dispositional hearing pursuant to R.C. 2151.353(E)(2). Daniel, the children's father, did not contest CCDJFS's motion for permanent custody of the children. The magistrate found that there was clear and convincing evidence that it was in the best interest of the children to grant permanent custody of the children to CCDJFS.
 {¶ 8} Appellant filed an objection to the magistrate's decision arguing that the decision was against the manifest weight of the evidence. The trial court overruled appellant's objection and upheld and affirmed the magistrate's decision. Appellant appeals from the trial court's decision raising four assignments of error. To facilitate our analysis, the assignments of error will be addressed out of order.
 Assignment of Error No. 3 {¶ 9} "The trial court erred to the prejudice of the appellant by "Rubber Stamping" a courtesy home study prepared by Hamilton County Department of Job and Family Services, in determining the best interests of these children, when it was shown that said home study relied on erroneous information knowingly provided by CCDJFS."
 {¶ 10} Appellant maintains that the trial court abused its discretion by granting permanent custody of Annalissa and Raven to CCDJFS. She argues that its decision was against the manifest weight of the evidence. She further maintains that it is in the best interest of the children for them to be placed in her custody.
 {¶ 11} The state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met before severing the natural parents' constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982), 455 U.S. 745, 759 and 769,102 S.Ct. 1388. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 12} An appellate court's review of a trial court's decision finding clear and convincing evidence is limited to whether sufficient credible evidence exists to support the trial court's determination. In re Starkey, 150 Ohio App.3d 612, 617,2002-Ohio-6892.
 {¶ 13} Because the trial court is required to make specific statutory findings before granting permanent custody of a child to the state, the reviewing court must also determine whether the trial court followed the statutory factors in making its decision or abused its discretion by deviating from the factors. See Inre William S., 75 Ohio St.3d 95, 1996-Ohio-182.
 {¶ 14} When a state agency moves for permanent custody, the trial court is first required to determine by clear and convincing evidence "that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion * * *." R.C. 2151.414(B)(1). In making this best interest determination, the trial court must consider all relevant factors, including but not limited to the following factors enumerated in R.C. 2151.414(D):
 {¶ 15} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care-givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 16} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 17} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 18} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 19} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 20} Once a trial court finds by clear and convincing evidence that it is in the best interest of the child to grant permanent custody to the movant, the court may grant permanent custody if any of the following in R.C. 2151.414(B)(2) apply:
 {¶ 21} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 22} "(b) The child is abandoned.
 {¶ 23} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 24} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 25} Upon thoroughly reviewing the record, we find that clear and convincing evidence supports the trial court's determination that it is in the best interest of the children to be permanently placed in the custody of CCDJFS. The trial court made findings related to the applicable statutory factors set forth in R.C. 2151.414(D), which are supported by the evidence.
 {¶ 26} In its decision, the trial court noted that the children were bonded with their foster parents. It also noted that Adrienne executed permanent surrenders of both children and Daniel did not want custody of the children and was not contesting the motion for permanent custody.
 {¶ 27} It further noted that the children needed a legally secure permanent placement and that the foster parents wished to adopt them. It noted that the children do not have a significant relationship with appellant. It also stated that although appellant may be able to provide them a stable home, their lives would be disrupted over a five to six month period to transition them to her care.
 {¶ 28} The magistrate also noted that the home study completed by Hamilton County Job and Family Services ("HCJFS") was thorough with well-reasoned conclusions justifying CCDJFS's decision not to temporarily place the children with appellant when they were first removed from Adrienne and Daniel's care. Finally, it found that the children had "been in the temporary custody of one or more public children service agencies * * * for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the children cannot be placed with either of the children's parents within a reasonable time, or should not be placed with the children's parents."
 {¶ 29} We find that sufficient credible evidence exists to support the trial court's determination. Appellant's contentions concerning the HCJFS home study, the children's potential mental health issues, and the lack of a case plan for adoption are without merit.
 {¶ 30} As to the home study, appellant claims that CCDJFS "inferred the result it desired" by sending a letter to HCJFS requesting a home study of appellant which included misstatements of facts.
 {¶ 31} After Annalissa was placed in the care of CCDJFS, appellant requested that she be designated residential parent and legal guardian of Annalissa.[1] CCDJFS sent a letter to HCJFS, which included a limited history of the case, asking that they complete a home study on appellant. The HCJFS child custody investigator interviewed appellant and appellant's husband, spoke with the CCDJFS caseworker, read the report of appellant's hospitalization for suicidal ideation,[2] and read a report from appellant's therapist. Using all of the information gathered, the HCJFS child custody investigator concluded that it was questionable whether Annalissa should be placed with appellant at that time.
 {¶ 32} It is obvious from the report that HCJFS thoroughly investigated the suitability of appellant as a placement for Annalissa. Appellant was allowed the chance to speak with the HCJFS child custody investigator and explain any seen problems. We see no error with the trial court or CCDJFS relying upon the report.
 {¶ 33} Appellant's assertion that the trial court did not give proper weight to the children's potential mental illness when determining not to allow appellant to obtain custody of the children is also without merit.
 {¶ 34} Appellant argues that the children's parents, Daniel and Adrienne, have been diagnosed with bipolar disorder and personality disorder respectively. Appellant admittedly has been diagnosed with depression. She asserts that because the children's family has a history of mental illness, there is a high possibility that the children will develop it as well. She argues that because she has dealt with children that have mental illness, she would be better suited to rear the children. She also maintains that the foster family, who is currently caring for the children and wish to adopt them, has not been told of this family history.
 {¶ 35} In its decision, the magistrate took into consideration the children's as well as appellant's mental health issues. It stated "[a]t trial the various witnesses of the paternal grandmother [appellant] cited as strengths her ability to appropriately cope with her own mental health problems and her understanding of the mental health issues which might confront her children." However, it found that the children had already had disruptions in their care and it would take five to six months to transition them into appellant's care. The magistrate determined that the children needed stability, and they had a good opportunity for that with their foster parents. It heard testimony that the children were happy and bonded with their foster family and called them "mom" and "dad." Accordingly, appellant's assertion is without merit as the trial court did take into consideration the children's potential mental health issues.
 {¶ 36} Finally, appellant asserts that no case plan for adoption was approved or journalized pursuant to R.C. 2151.412. However, this court has held that an agency is not required to file an adoption plan before permanent custody is granted. SeeIn re Gang, Clermont App. No. CA2002-04-032, 2003-Ohio-197, at ¶ 39. Therefore, we find no merit in the assertion.
 {¶ 37} After thoroughly reviewing the record, we find that the trial court's decision is supported by sufficient credible evidence. Accordingly, appellant's third assignment of error is overruled.
 Assignment of Error No. 2 {¶ 38} "The trial court erred to the prejudice of the appellant by failing to hold a hearing pursuant to O.R.C.2151.353 (E)(2), as requested in appellant's motion, to modify the court's prior dispositional order, as required by statute."
 {¶ 39} Appellant maintains that she filed a motion pursuant to R.C. 2151.353(E)(2) and that the trial court did not hold a hearing as that statute requires. R.C. 2151.353(E)(2) pertinently states:
 {¶ 40} "Any public children services agency, any private placing agency, the department of job and family services, or any party, other than any parent whose parental rights with respect to the child have been terminated * * *, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition issued pursuant to division (A) of this section * * *. The court shall hold a hearing upon the motion as if the hearing were the original dispositional hearing and shall give all parties to the action and the guardian ad litem notice of the hearing pursuant to the Juvenile Rules."
 {¶ 41} Appellant filed a motion to intervene on June 14, 2002.[3] Included within that filing was a motion, pursuant to R.C. 2151.353(E)(2), for a new dispositional hearing. The trial court had already scheduled a hearing for July 19, 2002 pursuant to CCDJFS's motion for permanent custody of the children. During the July 19, 2002 hearing, the magistrate allowed appellant to intervene. On that date, the magistrate did not make a ruling as to appellant's request for a new dispositional hearing.
 {¶ 42} The permanent custody hearing was continued until September 20, 2002. At that time, appellant inquired as to the magistrate's finding as to her motion for a new dispositional hearing. The magistrate denied her motion. Appellant did not file objections as to this determination.
 {¶ 43} Juv.R. 40(E)(3)(b)[4] provides that a party "shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusions under this rule." Failing to draw the trial court's attention to a possible error, by objection or otherwise, where the error could have been corrected, results in a waiver of the issue for purposes of appeal. In re Ebenschweiger, Butler App. No. CA2003-04-080,2003-Ohio-5990, at ¶ 9.
 {¶ 44} However, an exception to this waiver exists if plain error is found. Id. at ¶ 10. Plain error involves those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice and where the error "seriously affects the basic fairness, integrity or public reputation of the judicial process." Goldfuss v.Davidson, 79 Ohio St.3d 116, 122, 1997-Ohio-401.
 {¶ 45} Because appellant did not object to the magistrate's decision denying her motion for a new dispositional hearing, she has waived that issue as error. Upon a review of the record, we find that no plain error exists to overcome appellant's waiver.
 {¶ 46} The July 14, 2002 and September 20, 2002 hearings were held to consider whether permanent custody should be granted to CCDJFS. At those hearings, appellant was permitted to enter evidence and testify as to her ability to care for the children on a permanent basis. She presented a new home study that she paid to have conducted stating that she was a viable candidate to obtain custody of the children. She presented expert testimony as to her mental health, and she also testified as to her willingness and ability to care for the children.
 {¶ 47} The magistrate also heard the testimony of the CCDJFS caseworkers whom stated that the children were happy and bonded with their foster parents. A caseworker also testified that the children called their foster parents "mom" and "dad" and that the foster parents were willing to adopt both children. The magistrate reviewed the HCJFS home study report requested by CCDJFS, which did not recommend appellant as a viable placement for the children. It also learned that appellant had a suicidal ideation episode. Finally, the magistrate heard that it would take up to six months to reintroduce the children to appellant to allow her to have custody of the children.
 {¶ 48} The magistrate, hearing and considering all of this evidence, in effect permitted appellant to have a dispositional hearing. Upon considering all of the evidence presented, the magistrate, and the trial court, determined that it was in the best interests of the children to grant permanent custody to CCDJFS. We find no plain error in the trial court's denial of appellant's motion. Appellant's second assignment of error is overruled.
 Assignment of Error No. 4 {¶ 49} "The attitude of the trial court, with respect to requiring ccdfjs [sic] comply with appellant's request for production of documents was arbitrary, capricious and an abuse of discretion and appellant was prejudiced by inability to review and utilize documents from which she was restricted the use of at trial."
 {¶ 50} Appellant argues that CCDJFS did not timely respond to her discovery request to view the case file and records. CCDJFS produced the items at the September 20, 2002 hearing. Appellant maintains that her right to discovery was violated because she did not have enough time to review the records.
 {¶ 51} A review of the transcript of the proceedings shows that appellant agreed to start the hearing that morning and review the records later in the day. The magistrate told her "[y]ou can take all the time you want to review whatever you'd like." Appellant made no objection at trial or written objection to the magistrate's decision concerning the procedure.
 {¶ 52} As stated above, a party may not assign as error a finding of fact or conclusion of law unless that party has objected to that finding or conclusion. Juv.R. 40(E)(3)(b); seeIn re Stephens (Oct. 1, 2001), Butler App. No. CA2001-01-021. However, in exceptional circumstances the error may rise to plain error if it rises to the level of challenging the legitimacy of the underlying judicial process itself. Goldfuss,79 Ohio St.3d at 122.
 {¶ 53} Appellant did not object and the trial court allowed appellant time to review the records. We find no error in the judicial proceedings below that challenge the legitimacy of the judicial process. Appellant's fourth assignment of error is overruled.
 Assignment of Error No. 1 {¶ 54} "The trial court erred to the prejudice of appellant by granting permanent custody of Annalissa Mccann and Raven Marceau to the Clermont County Dept. of Job and Family Services when the ccdjfs did not make reasonable diligent efforts at reunification with the parents as required by O.R.C. 2151.419."
 {¶ 55} Appellant argues that CCDJFS failed to make a reasonable effort to prevent the removal or to return the child to home pursuant to R.C. 2151.419. She argues that the case plan for Adrienne was only "the most general goals with limited services to be provided for mother's rehabilitation." She also argues that no case plan was ever developed for Daniel, the children's father.
 {¶ 56} R.C. 2151.412 requires a public children's service agency to prepare and maintain a case plan for any child for which the agency has temporary or permanent custody. Here, CCDJFS did file a case plan as to Adrienne. Adrienne failed to complete that case plan and surrendered the children to CCDJFS.
 {¶ 57} CCDJFS did not file a case plan as to Daniel, however, he did not wish to regain custody of the children. He told CCDJFS he wanted visitation. Daniel did not contest the permanent custody motion. Further, Daniel has not alleged that he was prejudiced by any failure to file case plans as required. We have held previously that an appellant lacks standing to challenge an alleged error committed against a nonappealing party absent a showing that she has been prejudiced by that alleged error. Inre Cornett, Warren App. No. CA2003-03-034, 2003-Ohio-4871, at ¶ 29.
 {¶ 58} Appellant has made no showing that she was prejudiced. In this case CCDJFS did make reasonable efforts to return the children to their parents, the parents decided they did not want to or could not care for the children. Accordingly, appellant's first assignment of error is overruled.
Judgment affirmed.
Valen, P.J., and Young, J., concur.
[1] At the time the motion was filed, Raven had not yet been born.
[2] A suicidal ideation is where a person talks about wanting to commit suicide, but does not actually go through with her idea.
[3] The court docket indicates that appellant filed a motion to intervene as to Annalissa on September 14, 2001.
[4] Juv.R. 40(E)(3)(b) has been amended with the same language reflected in Juv.R. 40(E)(3)(d).